UNITED STATES DISTRICT COURT FOR THE

SOUTHERN DISTRICT OF FLORIDA

MIAMI     DIVISION

FILED BY _____ D.C.

JAN 23 2020

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - MIAMI

TERRY E. SEARS,

    Plaintiff,

VS.

DAVID D. THOMAS, et al.,

    Defendants,

CASE No. 2:16-cv-14500-DMM

~~OUTGOING LEGAL MAIL
PROCESSED & MAILED FOR
MAILING ON~~

1-24-2020

# MOTION FOR AN ADVERSE INFERENCE JURY INSTRUCTION
## DUE TO SPOLIATION OF EVIDENCE

PLAINTIFF, Terry Sears, pro se, moves this Honorable Court to enter an order requiring an adverse inference jury instruction to the jury in this case pursuant to Federal Rules of Civil Procedures, Rule 7, and in support thereof would state the following:

Critical video evidence in this case existed at one point in time. Due to the arbitrary action or inaction of the Defendants, the video evidence no longer exists. The facts of the altercation at issue are in dispute between the Plaintiff and the Defendants. A video recording of any part of the altercation could have resolved many of the factual disputes, including the extent of Plaintiffs' injuries, and whether he was beaten

by correctional officers after being placed in handcuffs and lying on the ground face-down and subdued. The Defendants contend that video was taken, but only of the Plaintiff after the physical altercation had occurred.

Because the video of the Plaintiff was captured shortly after the use of force had occurred, that video-footage would be the unbiased, best evidence of the physical and emotional injuries that the Plaintiff suffered as a result of his confrontation with the Defendants.

The Defendants failed to preserve the evidence as required by Florida law. The video-footage no longer exists due to the action or inaction of the Defendants. The absence of the video-footage is critical because it would show the then-current physical condition of Plaintiff's face, his glasses, and his attire and battered state Plaintiff contends would have impeached the self-serving affidavits submitted by the Defendants and other facility staff. That evidence is directly related to key elements of Plaintiff's civil rights claims— that prison officials applied unnecessary and wanton infliction of pain; that the force used was indeed excessive; that no threat was reasonably perceived by the Defendants; the extent of the injuries suffered; and any efforts made by Defendants to temper the severity of a forceful response; and whether Plaintiff was subjected to cruel and unusual punishment.

2

On or about July 17, 2017, the District Court issued an Order Scheduling Pre-trial Proceeding and discovery due by November 17, 2017. [DE 32]

On August 10, 2017, Plaintiff's First Request for Production of Documents was filed. Plaintiff specifically requested any and all videotaped footage of the use of force incident on August 7, 2015, and Defendants responded that none existed, rather than disclosing that it did exist but was not preserved. Under these circumstances, Plaintiff is entitled to an adverse inference jury instruction.

## STATEMENT OF THE FACTS

This case arises from a use of force incident between Plaintiff and various correctional officers at Okeechobee Correctional Institution.

On August 7, 2015, at 12:55 pm, Plaintiff was arbitrarily arrested and placed in handcuffs by Defendant A. Villapando. Plaintiff was escorted to the Captain's Office by Defendant D. Thomas. When Defendant Thomas unlocked the door and entered the Captain's Office, Plaintiff followed him and he turned around suddenly and shoved Plaintiff into the closed door behind him causing him to bang his head on the door. He yelled, "don't follow me in no fucking office."

Defendant D. Thomas escorted Plaintiff outside and shoved his face into the plexiglass window and Plaintiff began to complain about

3

being assaulted in handcuffs. Defendant Thomas yelled, " you better be glad you're in handcuffs", and Plaintiff responded, " you better be glad I'm in handcuffs."

And Defendants D. Thomas and A. Villalpando utilized a modified "take-down" restraint on Plaintiff where each Defendant placed their arms under Plaintiff's handcuffed arms and lift upwards and caused pain to his shoulders. Plaintiff was escorted to the medical Building in this devised restraint and Nurse F. Sapp did a pre-confinement exam and Plaintiff complained about being assaulted.

Plaintiff was escorted from the medical building through a rear exit and walked down a back road to the confinement unit located in B-dorm.

And Defendants D. Thomas and A. Villalpando called Plaintiff a nigger several times and threatened to deal with him in confinement. And Plaintiff responded by calling Defendant Villalpando a stupid dumb whore.

As Defendant D. Thomas unlocked the rear gate to B-dorm and Plaintiff entered and stated, " Florida Department of Corrections is full of punks just like you and I sue you whores every chance I get." Defendant Thomas punched Plaintiff in the face and broke his eye-glasses. Plaintiff tried to run to avoid being punched but Defendant Thomas slammed him

4

on the ground and kicked Plaintiff, twice, in his side and commenced to punch Plaintiff about the head and face for thirteen (13) minutes.

Defendant A. Villalpando called for assistance and kneed Plaintiff in his back and stood by and watched and failed to intervene. The inmates in the confinement unit began yelling out the windows and banging on the doors, bunks, and windows to expose the inmate abuse and did witness some or all of the official misconduct.

Several officers responded and also used excessive and un-necessary force on Plaintiff while incapacitated. Defendant D. Thomas ordered the officer with the video camera not to start videotaping the use of force incident and stood by and watched.

Plaintiff was escorted into the confinement unit and Nurse F. Sapp was call to the confinement unit to conduct another pre-confinement exam and Plaintiff complained of being physi-cally assaulted by Defendant Thomas, Defendant Villalpando, and the responding prison officials.

Plaintiff showed Nurse Sapp his broken glasses and bruised left eye and muddy clothes; and complained of injuries to his shoulders, side, and back.

The Plaintiff informed Nurse Sapp that Defendant D. Thomas was manipulating the video camera to conceal official misconduct and inmate-abuse. And Defendant Thomas interrupted the examination and Nurse F. Sapp could not complete her pre-confinement examination and Plaintiff was denied prompt and adequate medical treatment for twenty-eight (28) days.

On August 11, 2015, Nurse Torres responded to Sick-call Requests where Plaintiff requested for X-rays to be taken of his ribcage because his ribs may be broken. Nurse Torres provided Ibuprofren and Analegic Balm and Plaintiff was systematically denied adequate medical treatment for his serious medical problems.

On August 13, 2015, Plaintiff went to the Disciplinary Hearing and argued he was physically assaulted by a supervisory official while restrained in handcuffs. Plaintiff was found guilty of both disciplinary reports filed by Defendant A. Villalpando and placed in punitive segregation for sixty (60) days.

On September 11, 2015, at 2:40 pm, Plaintiff was released from segregation as a result of the 6-1 Disobeying Verbal Order disci-

plinary report being overturned, And Plaintiff requested "Protective Management" because he was in fear of being killed by Defendant D. Thomas and Defendant A. Villalpando.

Plaintiff was placed in Administrative Confinement and given a disciplinary report for 6-1 Disobeying Verbal Order for requesting protective management against a prison official.

On September 17, 2015, Plaintiff went to the Disciplinary Hearing and Defendant D. Thomas was a Team Member and tainted the disciplinary proceeding. After reading the statement of facts and the Plaintiff's statement he decided to recuse himself.

Captain L. Lankford replaced Defendant Thomas and conspired together for seven (7) minutes and departed. When the hearing commenced, Captain Lankford was very bias and interrupted Plaintiff on several occasions as he argued, "I was given a disciplinary report, in retaliation, for requesting protective management status against prison officials." And Plaintiff was found guilty based on the statement of facts and was placed in punitive segregation for 30 days.

On or about January 6, 2016, Plaintiff filed two (2) Informal Grievances on Internal Security headed by Defendant T. Brown for intentionally failing to call F-dorm to the Recreation yard and Canteen. And Defendant Brown denied both grievances and sought to retaliate.

On January 13, 2016, at 1:25 pm, Defendant T. Brown retaliated against Plaintiff and arbitrarily arrested him as a result of grievances filed against Internal Security and the Injunction filed against supervisory officials.

Plaintiff was handcuffed behind his back and Defendant Brown called for assistance and Defendant D. Thomas and Defendant M. Quinones responded. Plaintiff was accused of going to the eastside of the compound, and Plaintiff argued he went to the music kiosk to purchase more music for his Mp3 player.

Defendant D. Thomas and Defendant M. Quinones utilized a "take-down" restraint by hooking their arms under Plaintiffs handcuffed arms and lifting upwards causing excruciating pain to his previously injured shoulders.

Defendants T. Brown and D. Thomas readjusted the handcuffs and squeezed them on tighter. Plaintiff was bent-over, and at one point, he

was flipped over onto the pavement. Defendant D. Thomas exclaimed, "it works better when two men does it!"

Plaintiff was yelling and complaining as he was dragged in the devised restraint for sixty-five (65) meters for twenty-three (23) minutes until his pants and underwear fell down exposing his nude genitals and buttocks. Defendant T. Brown stood by and watched for most of the incident, and pulled Plaintiff's elbow to cause the hand-cuffs to cut into the skin around his wrists.

No video-camera was even called for during this incident and Defendant Thomas ordered for Plaintiff to be taken directly to the confinement unit and he was denied prompt and adequate medical treatment and care. Plaintiff requested a medical emergency from the confinement unit and was given a sick-call request.

On January 14, 2016, at 12:45 pm, four (4) disciplinary reports were filed against Plaintiff. Defendant T. Brown wrote two (2): [6-1 Disobeying Verbal Order and 1-3 Spoken Threats] and Defendant D. Thomas wrote two (2): [9-17 Disorderly Conduct and 1-3 Spoken Threats].

On January 21, 2016, at 10:40 am, Plaintiff went to the Disciplinary Hearing and argued Defendants T. Brown and D. Thomas is retaliating against me

9

for filing grievances and the injunction against supervisory officials. The Disciplinary Team failed to call Plaintiff's witnesses: Inmate, Glenn Semento and Trinity Canteen Manager. Plaintiff was found guilty based on Defendants T. Brown and D. Thomas' statements and was placed in punitive segregation for one-hundred and twenty (120) days.

On January 25, 2016, (twelve (12) days after the use of force incident), Plaintiff was finally examined by Doctor J. Nichols who diagnosed his injuries as: [bruised ribs and sprained rotary cups in his shoulders] and he prescribed and ordered medication that was never received as a result of Plaintiff being transferred to another institution two days later.

The requested video-footage would have shown the extent of the Plaintiff's injuries that resulted from the physical contact between the parties. When Plaintiff requested any and all videotaped footage taken of the use of force incident(s) administered upon Plaintiff occurring on August 7, 2015 and January 13, 2016, the Defendants responded, " A copy any video will be included upon receipt for plaintiff's viewing. In addition, an invoice is being mailed to plaintiff should he want copies made; the document will be copied and mailed to plaintiff upon receipt of payment." [DE 38]

The Defendants explicitly failed to produce other items in the production Request and simply ignored many questions in their interrogatories Response. [DE 35].

The District Court issued its Pretrial Scheduling Order and directed the parties to conduct discovery due by November 17, 2017, and dispositive motions due by December 22, 2017. [DE 32].

At the closing of discovery, the Defendants had failed to comply with discovery obligations and Plaintiff was highly prejudiced.

On January 3, 2018, the Defendants filed a Motion for Extension of Time to Reopen Discovery and Motion for Leave to File. [DE 48]. And the District Court granted the Defendants' motions prior to Plaintiff's Response in Opposition. [DE 49], [DE 53].

And on January 16, 2018, Defendants filed a Motion to Take Deposition from Plaintiff and the District Court issued an Order permitting Defendants to depose incarcerated Plaintiff without an attorney. [DE 50], [DE 51].

On February 8, 2018, Plaintiff filed a Motion to Compel Discovery [DE 61] and the District Court denied Plaintiff's motion to compel discovery. [DE 66].

However, without proper discovery, Plaintiff is severely prejudiced in establishing a prima facie case or defense and the jury is left to decide the facts based on testimony submitted by prison officials, nurses, and other staff members who have a work-relationship against an incarcerated pro se Plaintiff.

As set forth below, under these circumstances, the Plaintiff is entitled to an adverse inference jury instruction as a matter of law.

## ARGUMENT

## SPOLIATION OF EVIDENCE

Critical video evidence in this case existed at one point in time. Due to the arbitrary action or inaction of Defendants, the video evidence no longer exists. The facts of the use of force incident at issue are in dispute between the Plaintiff and the Defendants.

A videotaped footage of any part of the use of force incident could resolve many of the factual disputes of whether Plaintiff was assaulted by correctional officers after he was handcuffed and subdued and whether the extent of his injuries are more than de minimis

injuries, and whether he was restrained in a "take-down" restraint and dragged sixty-five meters for twenty-three minutes until his pants and underwear fell down exposing his genitals and buttocks.

Florida law requires correctional officers to videotape **all** use of force incidents. " Video recordings of all use of force incidents shall continue uninterrupted from commencement of recording until the situation is stable and under control and the inmate is placed in a secure cell or transport vehicle for transfer." Fla. Admin. Code, Rule 33-602.201 (3-5).

Here, Defendants admitted that the videotaped footage began after the initial sequence of events, and the post-use of force pre-confinement examination by Nurse Francis Sapp support this admission.

Assuming that the officers complied with Florida law requiring uninterrupted video recording, a significant portion of the incident at issue was captured. Nevertheless, no video footage was produced in Plaintiff's production request filed on August 10, 2017. [DE 38].

Defendants responded, "A copy any video will be included upon receipt for plaintiff's viewing. In addition, an invoice is being mailed to plaintiff should he want copies made; the document will be copied

and mailed to plaintiff upon receipt of payment." [DE 38]. Defendants failed to produce other items in the production request, to wit:

[Item 7 - Any and all Inmate Witnesses in B-dorm Confinement Unit; Item 11 - Any and all prior Use of Force Reports at Okeechobee C.I. since June, 2013 to June, 2016; Item 18 - State the full name, title, and address of Doctor J. Nichols who seen, interviewed, and examined Plaintiff's injuries on January 25, 2016; Item 20 - Any and all listed and documented injuries to Plaintiff sustained during the use of force incident(s)].

Moreover, the District Court issued its Pretrial Scheduling Order and directed the parties to conduct discovery due by November 17, 2017 and dispositive motions due by December 22, 2017. [DE 32].

The Defendants blatantly failed to comply with discovery obligations and severely prejudiced Plaintiff in establishing a prima facie case or defense in this cause.

Plaintiff filed his Second Request for Production of Documents [DE 80] and the District Court denied his Second Request for Production holding the time for discovery has now long since passed. [DE 81].

Plaintiff requests that an adverse inference instruction be given to the jury at trial because of the Defendants' spoliation of the video evidence.

The elements of a claim for spoliation of evidence are i) - the existence of a civil action; ii) - a legal or contractual duty to preserve the evidence which is relevant to the potential civil action; iii) - destruction of that evidence; iv) - significant impairment in the ability to prove the lawsuit; v) - a causal relationship between the evidence destruction and the inability to prove the lawsuit; and vi) - damages. Green Leaf Nursery v. E.I. DuPont De Nemours And Co. 341 F.3d 1291, 1308 (11th Cir. 2003). Plaintiff will address each element in turn:

i) The existence of a civil action: The incident(s) occurred on August 7, 2015 and January 13, 2016. In the following weeks and months thereafter, Plaintiff filed several internal grievances regarding the incident. After exhausting administrative remedies, Plaintiff filed his Complaint on November 7, 2016. As such, Defendants, and their agents, were on actual notice of the existence of the civil action almost immediately after the incidents occurred.

ii) A legal or contractual duty to preserve the evidence which is relevant to the potential civil action: Florida Administrative Code specifically requires correctional facilities to preserve videotaped use of force incidents. "All video recordings submitted with

Report of Force Used, Form DC6-230 shall be retained and maintained by the Office of Inspector General "in accordance with records retention statutes." Fla. Admin. Code, Rule 33-602.201 (10)(c). Further, "a litigant is under a duty to preserve evidence which it knows, or reasonably should know, is relevant to an action". Banco Latino, S.A.C.A. v. Gomez Lopez, 53 F. Supp. 2d 1273, 1277 (S.D. Fla. 1999).

Not only were the Defendants under a legal duty to preserve the video, but given Mr. Sears' nearly immediate commencement of the grievance process, Defendants knew or should have known that the videotape would be relevant to the action.

**iii) Destruction of that evidence**: Counsel for the Defendants misled Plaintiff into believing he would provide video footage for viewing and copying. Accordingly, no video footage was turned over to Plaintiff.

**iv) Significant impairment in the ability to prove the lawsuit**: Plaintiff is significantly impaired in his ability to prove his lawsuit. Instead of being able to use real-time video evidence to prove what occurred, the jury will now have to rely on witness testimony about an incident that occurred almost six years ago.

16

The Plaintiff, who was an inmate at the time of the incident and who remains incarcerated, will be forced to fight an unnecessarily difficult battle to convince the jury that his recollection of the event should prevail over the contrasting recollection of the Defendant correctional officers. Had the video footage been properly preserved, as required by law, the Plaintiff would not be faced with this significant impairment and could rely on the video footage to show what happened.

Furthermore, Plaintiff is required to show more than "minimal" injuries in order to be awarded damages over one dollar. The lack of video evidence significantly impairs Plaintiff's ability to prove the severity of his injuries. The years that have elapsed since the injuries occurred makes this task particularly difficult. Because the Plaintiff was incarcerated at the time of the incident, Plaintiff had no means of documenting his own injuries, and must now rely on whatever minimal documentation Okeechobee C.I. chose to create and maintain.

Had the video footage been preserved as required, the jury could see for themselves the nature of the physical attack on Mr. Sears and his resulting physical injuries.

v) A causal relationship between the evidence destruction and the inability to prove the lawsuit: Because the Defendants either destroyed or failed to preserve the video footage of the incident, in violation of Florida law, Plaintiff is now impaired in his ability to prove his lawsuit.[1]

vi) <u>Damages</u>: Plaintiff is irreparably harmed and severely prejudiced by the destruction of this video evidence. As a result of the incidents in question, Plaintiff suffered damages.

Without the videotaped footage, Mr. Sears faces significant impairment in proving his case and recovering the damages to which he is entitled.

Because each of the required elements have been met, as set forth above, the Defendants' destruction and/or failure to preserve the video evidence falls clearly within the definition of spoliation.

---

[1] Pursuant to the General Records Schedule GS1-SL for State and Local Government Agencies published by the State of Florida, "when a public agency has been notified that a potential cause of action is pending or underway, that agency should **immediately** place a hold on disposition of **any and all** records related to that case", F.A.C. 1B-24.003(1)(j)(VI)(A) (emphasis in original).

## Adverse Inference Instruction

The named Defendants either destroyed the video footage or failed to preserve the critical video evidence as required by law. For this reason, Plaintiff is requesting that the court provide the adverse inference instruction to the jury at trial. "Sanctions may be imposed upon litigants who destroy documents / critical evidence while on notice that they are or may be relevant to litigation or potential litigation, or are reasonably calculated to lead to the discovery of admissible evidence." Banco Latino, S.A.C.A. v. Gomez Lopez, 53 F. Supp. 2d 1273, 1277 (11th Cir. 1999).

Here, the Defendants were on notice almost immediately after the incidents that the Plaintiff was seeking administrative and civil remedies and they knew, or should have known, that the video footage would be relevant to litigation. Therefore, Plaintiff requests sanctions deemed just and appropriate because the prejudice is so great.

In the Eleventh Circuit, adverse inference instructions are permitted when a party fails to preserve evidence or destroys the same in bad faith. Bashir v. Amtrak, 119 F. 3d 929 (11th Cir. 1997); Hester v. Bayer Corp., 206 F.R.D. 683 (11th Cir. 2001); Telectron, Inc. v. Overhead Door Corp., 116 F.R.D. 107, 126 (11th Cir. 1987). "A showing of malice is not required in order to find bad-faith."

<u>MANN v. TASER INTERNATIONAL, INC.</u>, 588 F.3d 1291, 1310 (11th Cir. 2009).

In the instant case, the Defendants and/or persons under their control, destroyed or failed to preserve critical video evidence despite being under a legal duty to do so. "It can be assumed that the very reason for the existence of the code requirement to preserve the evidence is to avoid factual disputes such as the one at issue..."

To the contrary, Defendants were more than merely negligent in destroying or failing to preserve the video footage pursuant to their legal duty. Defendants knew or should have known that the video footage would have shown the use of force and the resulting injuries.

Despite this knowledge, the Defendants acted with a reckless disregard for the evidence, especially in light of Mr. Sears' nearly immediate commencement of a civil action.

Defendants' reckless disregard for their duty to preserve critical evidence amounts to bad-faith and has resulted in significant prejudice to the Plaintiff. Further, the Defendants failed to produce the video footage, and failed to comply with discovery rules, and their actions warrant an adverse inference instruction to the jury. Plaintiff's proposed jury instruction is attached to this motion as Exhibit A.

## CONCLUSION

WHEREFORE, in light of the foregoing reasons set forth above, Plaintiff respectfully requests that this Honorable Court enter an order providing that the court will give an adverse inference instruction to the jury at trial, and awarding such further relief that this Court deems just and appropriate under the circumstances.

10/ 1-20-20 .

/s/ Terry E. Sears
Terry E. Sears #13-08317
Taylor Correctional Institution
8501 Hampton Springs Road
Perry, FL   32348

## DECLARATION

UNDER THE PENALTY OF PERJURY, I declare the foregoing document is TRUE. 28 U.S.C. § 1746.

/D/ 1-20-20 .

/S/ *Terry E. Sears*
TERRY E. SEARS #B-063117

PLAINTIFF, PRO SE

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY, that a correct copy of the foregoing document has been placed in prison officials' hand with prepaid First Class U.S. Postage to be mailed to Ms. Carrol Y. Cherry Eaton, A.A.G., 110 S.E. Sixth Street, 10th Floor, Fort Lauderdale, FL 33301. Signed this 20th day of JANUARY, 2020.

/S/ *Terry E. Sears*
TERRY E. SEARS #B-063117
Taylor Correctional Institution
8501 Hampton Springs Road
Perry, FL 32348

22



**PRIORITY MAIL ★**

★ UNITED STATES POSTAL SERVICE ®

For Domestic and International Use

Label 107R, May 2014

★ TRACKED ★ INSURED ★

MR. TERRY E. STARS #B-08347
TAYLOR CORRECTIONAL INSTITUTION
8501 HAMPTON SPRINGS ROAD
PERRY, FL   32348-8747

CLERK, UNITED STATES DISTRICT COURT
★ SOUTHERN DISTRICT ★
400 NORTH MIAMI AVENUE
MIAMI, FL   33128-7716

MAILED FROM A STATE CORRECTIONAL INSTITUTION



OUTGOING LEGAL MAIL
PROVIDED TO TAYLOR C.I. FOR
MAILING ON

1-24-2020
DATE (MAILROOM-MAIN UNIT) OFFICIAL INT.

LEGAL MAIL

LEGAL MAIL